The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| T-MOBILE WEST LLC and INDEPENDENT TOWER HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF MEDINA, WASHINGTON,<br><br>Defendant. | NO. 2:14-cv-1455-RSL<br><br>INTERVENORS' MOTION FOR SUMMARY JUDGMENT<br><br>NOTED FOR: AUGUST 28, 2015 |

## I. INTRODUCTION

Plaintiffs' effective denial of service claim is premature. They have not exhausted opportunities under the City of Medina's code to obtain the City's permission for a facility that meets T-Mobile's needs. The Court should dismiss the action until and unless the plaintiffs pursue all of the administrative remedies available to them and still cannot obtain permits to address T-Mobile's alleged coverage gap.

In particular, the applicants' expert acknowledges that a tower just ten feet higher than that championed by the applicants at two alternative sites on the adjacent Department of Transportation parcel would likely address T-Mobile's alleged coverage gap. The applicants acknowledge that

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 1

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

wireless communication facilities are an allowed use on the DOT property (Dkt 13 at 10:7 (Amended Complaint)) and that a 90 foot tower can be authorized under the municipal code at alternative sites under either of two mechanisms: a variance or a text amendment. The applicants assert it is unlikely that they could obtain permission for a 90 foot tower at either of the alternative locations. But it is undisputed that they have not tried. The applicants have not sought to obtain either a variance or a text amendment to authorize a 90 foot tower at either alternative site. In the absence of any such evidence, this case should be dismissed as having been brought prematurely. The applicants should be directed to pursue and exhaust their rights under the municipal code before consuming more of the Court's time.

## II. THE LEGAL FRAMEWORK

### A. The Telecommunications Act of 1996 (TCA)

The TCA was adopted for a variety of purposes, one of which forms the basis for this case. Congress sought to encourage the development of the Nation's wireless system and did not want local land use permitting agencies to frustrate that goal. But Congress also recognized that land use decision making was the province of local governments so imposed only modest restrictions on local permitting authorities. "Except for the narrow limitations set forth in 47 U.S.C. § 332(c)(7)(B), '[t]he Telecommunications Act expressly preserves local zoning authority over the placement, construction and modification of personal wireless service facilities.'" *Cellular Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus*, 197 F.3d 64, 68 (3d Cir.1999)." *U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow, Oklahoma*, 340 F.3d 1122, 1132 (10th Cir. 2003).

> Some may disagree with Congress's decision to leave so much authority in the hands of state and local governments to affect the placement of the physical infrastructure of an important part of the

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 2

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

> nation's evolving telecommunications network. But that is what it did when it passed the Telecommunications Act of 1996, and it is not our job to second-guess that political decision. *City of Delafield*, 174 F.3d at 892.

*Id.*, 340 F.3d at 1136-37.

One of the "narrow limits" in the TCA forms the basis for the plaintiffs' second count. This is the Act's "effective prohibition" provision. The TCA states:

> (7) Preservation of local zoning authority
> (A) General authority
> Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
>
> (B) Limitations
> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--
> (I)   . . . ; and
> (II)  shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

47 U.S.C. § 332(c)(7). The plaintiffs assert that the City of Medina's denial of a variance and special use permit for their preferred site in Fairweather Park has the effect of prohibiting service in violation of subsection (7)(B)(i)(II). Dkt. 13 at 15 (Amended Complaint, Count II).

Underlying this claim is the plaintiffs' allegation that the City Code prohibits towers greater than 80' anywhere in the City. Thus, in the next section we describe the City's zoning code, including its current use and height restrictions and its provisions for granting variances and rezones.

B.  <u>The City of Medina's Land Use Regulations</u>

The City of Medina's land use regulations are codified in Title 20 of the municipal code. Chapter 20.20 defines the various zoning districts in the city. There are four residential zones (R-16,

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 3

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

R-20, R-30 and SR-30), a "neighborhood auto servicing zone" (NA), and a "park and public spaces" zone (Public). MMC § 20.20.020.B.

Section 20.37.050 specifies that personal wireless communication facilities ("WCF") are allowed in three of the four residential districts, the NA district, and the Public district, as well as in city right-of-ways (opened or unopened).

The zoning code establishes a standard WCF height limit of 35 feet. Chapter 20.37.070.B.2. But the code provides two explicit methods and one implicit method for allowing towers higher than 35 feet. One, if located in certain sections of Fairweather Nature Preserve, a WCF may be 80' high, provided certain additional conditions are met:

> 3. The maximum height in subsection (B)(2) of this section may be increased up to 80 feet without a variance if:
>
> a. The wireless communication facility is located in Fairweather Nature Preserve consistent with MMC 20.37.060(A); and
>
> b. The increase in height is the minimum necessary to avoid a significant gap in service coverage on the SR 520 floating bridge; and
>
> c. The increase in height supports future co-location on the support structure pursuant to MMC 20.37.110; and
>
> d. All other applicable provisions of this chapter are followed.

MMC 20.37.070.B.3.[1]

A second means for obtaining permission for a tower higher than 35' is with a variance. The code allows variances from the code's height limitations (and most other code restrictions). MMC 20.37.030. A variance must meet the criteria in MMC 20.37.030.F and may be subject to

---

[1] The conditions in MMC 20.37.060.A (referenced in subsection B.3.a) limit towers in Fairweather Nature Preserve to portions of the preserve which are "nonforested and adjacent to the state highway right-of-way." MMC 20.37.060.A.1.

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 4

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

conditions as specified in MMC 20.37.030.G. Requests for variances are decided by the City's Hearing Examiner. MMC 20.80.060.C.

A third method to obtain relief from the zoning code's current WCF height limits is via a text amendment. A text amendment would modify the height limits to allow, for instance, towers taller than 80' on DOT property along the SR 520 right-of-way. The City Council has the final authority to approve a text amendment. MMC 20.81.040. A text amendment must be consistent with the City's comprehensive plan; bear a substantial relation to public health, safety and welfare; and advance the public interest. MMC 20.81.080.

### III.   UNDISPUTED FACTS[2]

T-Mobile seeks to address an alleged coverage gap by installing an antennae on a new 80 foot high tower to be constructed in Fairweather Park. Dkt 13 at 7 (¶ 22). The applicants' own expert admits that a tower of 90' may be sufficient at two alternative locations suggested by the intervenors. Dkt 59 at 3 (¶¶ 6, 7). Plaintiffs contend that these alternative sites are legally infeasible because of zoning limitations.

> [A] facility taller than the 80 foot facility proposed for Fairweather Park [sic] would be required; those locations would require tower heights ranging from 100 feet up to 185 feet tall. Such heights are absolutely prohibited everywhere in the City of Medina. Accordingly, there are no feasible alternative locations where Plaintiffs can locate a wireless facility of sufficient height to remedy T-Mobile's gap. (Joint Motion at 4).

Dkt 56 at 3.

But it is undisputed that the plaintiffs have not applied for a variance at either of the alternative sites where the applicants' own expert acknowledges a 90 foot tower could suffice. Nor

---

[2]   We include as evidence of undisputed facts certain factual allegations in plaintiffs' amended complaint which we do not dispute.

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 5

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

have plaintiffs provided any evidence that the City Council would not amend the text of the zoning code to allow a 90' tower at either of these locations.

## IV. LEGAL ANALYSIS

The "effective prohibition" claim under the Communications Act is not ripe for resolution until the plaintiff has exhausted the remedies available to it from the land use permitting agency.

> Article III of the Constitution "limits the jurisdiction of the federal courts to actual cases or controversies and requires [the Court] to consider whether a plaintiff's claims are ripe." The question of ripeness "turns on the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Essentially, the Court is determining whether "the claim is sufficiently mature, and the issues sufficiently defined and concrete, to permit effective decisionmaking." The Telecommunications Act effectively codifies the ripeness requirement by providing a cause of action to "[a]ny person adversely affected by any *final action* ... by a State or local government or any instrumentality thereof that is inconsistent with [47 U.S.C. § 332(c)(7) ]." Thus, the Court must determine whether the Defendant has engaged in a "final action" denying the Plaintiff's request to construct a cell tower.

*T-Mobile S. LLC v. Dekalb Cnty., Ga.*, 2014 WL 5393535, at 2 (N.D. Ga. 2014) (footnotes with citations to internally quoted material omitted).

In *DeKalb*, T-Mobile sought a permit from the county for a new cell tower. Initially, the applicant and county believed the land was properly zoned and a permit could issue. The county then determined that actually a rezone would be required. Instead of seeking a rezone, T-Mobile sued under the effective prohibition prong of the TCA. The district court held that the action was not ripe. While the county had denied T-Mobile's request for a permit without a rezone, because T-Mobile had not sought a rezone, the matter was not ripe for judicial review:

> Here, T–Mobile has failed to establish that the Defendant conclusively denied T–Mobile's request for a permit. The Planning Department's conclusion — that local zoning laws apply to, and prohibit T–Mobile's proposed cell site — simply means that T–

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 6

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

> Mobile must now follow the applicable zoning procedure in order to secure approval. For example, the letter T–Mobile received indicated that T–Mobile could apply to have the land for the proposed cell site "rezoned." . . .
>
> Until a rezoning request is denied, and the [Board of Zoning Appeals] rejects T–Mobile's contentions, the Defendant has not "rendered its last word on the matter."

*Id.*

Likewise, in *Sprint Spectrum L.P. v. The City of Carmel, Indiana,* 361 F.3d 998 (7th Cir. 2004), Sprint sought a permit to add antennae to an existing tower and to build a ground-level equipment shelter. Sprint applied for and received an "improvement location" permit. The permit was issued, but a neighbor complained that a "special use" permit was required. The city agreed and revoked the first permit. Following a lengthy administrative process and review in state court, the city's decision to require a special use permit was upheld. Sprint then commenced an action under the TCA. The district court dismissed the action on ripeness grounds. The Seventh Circuit affirmed.

The Seventh Circuit explained that standard ripeness doctrine applies to cases under the TCA. While Congress had expressed its intent not to require exhaustion via means of exhausting all state court appeals, Congress left ripeness principles untouched. Without Sprint being able to show that it would not be able to obtain a special use permit, its effective denial of service claim was not ripe:

> Ripeness is, essentially, a question of timing. *See Reg'l Rail Reorganization Act Cases,* 419 U.S. 102, 140, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974). The doctrine's basic rationale "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 7

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

> Based on these principles, the Supreme Court has adopted specific ripeness requirements for cases challenging land use decisions. As the Court held in *Williamson County*, zoning authorities must be given an opportunity to "arrive[ ] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question" before its owner has a ripe challenge. *Williamson County*, 473 U.S. at 191, 105 S.Ct. 3108. The Court has further delineated what constitutes such a final decision. In *Williamson County* it held that the plaintiff's taking and due process claims were not ripe because it did not seek a variance. *Id.* at 193–94, 105 S.Ct. 3108. In *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 351–52, 106 S.Ct. 2561, 91 L.Ed.2d 285, the plaintiff's taking claim was premature because, even though a planning commission rejected the plaintiff's development plan, the plaintiff failed to submit less intensive plans. With these two cases, the Supreme Court "erected imposing barriers ... to guard against the federal courts becoming the Grand Mufti of local zoning boards." *Hoehne v. County of San Benito*, 870 F.2d 529, 532 (9th Cir.1989).

361 F.3d at 1002.[3]

Sprint argued that employing the ripeness doctrine was inconsistent with Congressional intent to provide cellular providers with quick access to federal court. The Seventh Circuit rejected this claim, too:

> We disagree. Examining both the language of the Act as well as its legislative history, we do not believe that Congress intended to modify the traditional standard for determining whether a land use dispute is ripe for federal adjudication.

*Id.* at 1003.

Turning to the facts of the case, the Seventh Circuit affirmed the trial court's conclusion that the case was not ripe:

> The [zoning board's] decisions do not completely foreclose Sprint from establishing wireless telecommunications facilities at the Zamber site. In fact, those decisions merely map a procedural route that Sprint must take in order to proceed with its project. It must

---

[3] The full citation for the Supreme Court's *Williamson* decision discussed in the quote is *Williamson County Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 8

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

> submit a plan to the commission and apply for a special use permit, neither one of which Sprint has done. Indeed, until Sprint is told definitely whether or not it is permitted to install an antenna and equipment shelter, it is mere speculation whether it even has an injury to complain of.

*Id.* at 1004.

Virtually the identical situation is present here. T-Mobile agrees it can address its alleged coverage gap with a 90' or 100' tower on two adjacent, publicly owned sites. (Both alternative sites are controlled by the Washington Department of Transportation.) It asserts it would need a variance or text amendment to use either site, but it has not applied for either type of approval at either site. Apparently, T-Mobile believes it is speculative that it would be able to obtain the requisite approvals for either site, but it is T-Mobile that is speculating (that approvals will not be granted) and it is that speculation which makes the current litigation premature, as the Seventh Circuit explained in *Sprint*:

> This case epitomizes the rationale behind the ripeness doctrine. Sprint argues, for example, that it would be futile to go back to the zoning board because it is not eligible for a special use permit or subdivision plat approval. These are precisely the types of issues that should be presented first to the local land use authority, which has a better understanding of the local ordinances. Sprint contends, moreover, that returning to the zoning board prior to seeking litigation would involve "impracticalities, time delays, expense and other inefficiencies." Such harm is not, however, sufficiently strong to outweigh the unfitness for review embodied in the ripeness doctrine. *See Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 735, 118 S.Ct. 1665, 140 L.Ed.2d 921 (1998) ("The ripeness doctrine reflects a judgment that the disadvantages of a premature review that may prove too abstract or unnecessary ordinarily outweigh the additional costs ....").

*Id.* at 1004–1005.

We recognize that in the cases cited above, the courts were addressing situations in which the cell provider had not exhausted permit possibilities for the specific parcel for which the initial application was filed. In contrast, in this case, T-Mobile has failed to exhaust remedies by failing to

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 9

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

seek approval for an adjacent publicly owned parcel. But T-Mobile's "effective prohibition of service" claim inherently includes the allegation that there is no alternative site available that could address the coverage gap. In *American Tower Corp. v. City of San Diego*, 736 F.3d 1035 (9th Cir. 2014), the Ninth Circuit flatly rejected an applicant's claim that San Diego created an "effective prohibition of service" when the applicant provided virtually no analysis of the feasibility of alternative sites.

> ATC did not adduce evidence allowing for a meaningful comparison of alternative designs or sites, and the City was not required to take ATC's word that these were the best options. Consequently, ATC failed to show that its facilities were the least intrusive means of filling a significant gap in coverage, and the City is entitled to judgment as a matter of law on the effective prohibition claim.

763 F.3d at 1057.

The two alternative sites are not excluded from consideration because the sites would require additional approval. While it is true that some courts have indicated that an alternative site must be currently zoned for WCFs to be available, in each case the applicant's preferred site did not require a variance or rezone to accommodate the WCF. *See T-Mobile West Corp. v. City of Agoura Hills*, 2010 WL 5313398 (C.D. Cal. 2010) (preferred location only required a Conditional Use Permit while the proposed alternative required an ordinance amendment); *T-Mobile West Corp. v. City of Huntington Beach*, 2012 WL 4867775 (preferred location was the only site technologically feasible, leasable, zoneable, and buildable). That situation simply does not exist here. In addition to the required special use permit, T-Mobile sought two variances to accommodate the proposed tower. Dkt 13 at 11 (Amended Complaint, ¶ 42). T-Mobile cannot claim that alternative sites are unavailable by applying for only variances for one site and claiming variances for other sites are "speculative." In *American Tower*, the Ninth Circuit rejected the notion that the applicant can make

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 10

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

the determination of feasibility of other sites for a local government: "In effect, ATC would make the applicant — rather than the locality — the arbiter of feasibility and intrusiveness, gutting the 'least intrusive means' standard with predictable, applicant-friendly results." 763 F.3d at 1056.

Under T-Mobile's logic, in locations where all possible sites require a variance, text amendment or rezone, the cell provider would control the determination of which sites are feasible simply by applying for approvals at one site and declaring that obtaining approval for all other sites is speculative. The applicant would be holding the proverbially gun to the jurisdiction's head: either grant the variances for the single site the applicant prefers or be ordered to do so by a court -- because every other site is necessarily "speculative."

The Examiner found that the applicants failed to present any evidence that any other "types of facilities or other locations *were even considered,*" noting that their failure to explore and/or document alternatives sites was a reason for denying their application. Dkt 49-1 at 23. "The Code does not merely require an Applicant to successfully lease property from the City and then seek SUP approval. Instead, it mandates that the Applicant demonstrate the need for an SUP after exploring options involving other facilities, other locations, and even locations outside of the city limits. MMC 20.37.140.C.3." *Id.*

Under T-Mobile's logic, an applicant could apply for one site, make a lame case for obtaining approvals there, and then assert that all other sites are "infeasible" because of the need for a similar variance or text amendment and, thereby establish its effective prohibition of service claim.[4] Given the extremely narrow limits the TCA imposes on local land use decisions, *Cellular*

---

[4] In addition to finding that the applicants failed to "even consider" alternative sites, the Examiner also found the applicants' efforts woefully deficient in several other key respects. For instance, the Examiner determined that there was nothing in the record – other than "a brief reference to it in a letter provided by T-Mobile" – supporting the notion that a significant gap in coverage exists and, in fact, he carefully lists that there is no "schematic, scientific,

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 11

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

*Telephone Co. v. Zoning Bd. of Adjustment of the Borough of Ho–Ho–Kus, supra; U.S. Cellular Tel. of Greater Tulsa L.L.C. v. City of Broken Arrow, Oklahoma, supra,* the Court should reject the applicants' claims which would reduce local government control to almost nothing.

V.   CONCLUSION

T-Mobile cannot claim that adjacent sites controlled by WSDOT are not feasible, if it has not even tried to obtain zoning approvals for those sites. Because the "effective prohibition" claim inherently requires an assessment of the viability of alternative sites and because the applicants assert the alternative sites are not viable from a zoning perspective, the ripeness cases involving zoning determinations apply here.

For the foregoing reasons, the Court should grant summary judgment and dismiss this case as premature for judicial review.

Dated this 4th day of August, 2015.

    Respectfully submitted,

    BRICKLIN & NEWMAN, LLP

    By:   s/ David A. Bricklin
           David A. Bricklin, WSBA No. 7583
           Email: bricklin@bnd-law.com
           BRICKLIN & NEWMAN, LLP
           1001 Fourth Avenue, Suite 3303
           Seattle, WA  98154
           Telephone:  (206) 264-8600
           Facsimile:  (206) 264-9300
           Attorneys for Respect Medina and
           Medina Residents

---

documentary or testimonial evidence" supporting their assertion of a significant gap. Dkt 49-1 at 23. Such a limp effort should not be the basis for a claim that the applicant need not consider other sites simply because they would involve a variance or text amendment, too.

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 12

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following persons:

Linda Atkins
DAVIS WRIGHT TREMAINE LLP
777 108th Avenue NE, Suite 2300
Bellevue, WA 98004

T. Scott Thompson (*Pro Hac Vice*)
Daniel P. Reing (*Pro Hac Vice*)
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave. NW, Suite 800
Washington D.C. 20006
Email: ScottThompson@dwt.com
Email: DanielReing@dwt.com
*Counsel for Plaintiffs T-Mobile West LLC*

Richard M. Stephens
STEPHENS & KLINGE LLP
10900 NE 8th Street, Suite 1325
Bellevue, WA 98004
Email: stephens@SKLegal.pro
*Counsel for Plaintiff Independent Towers Holdings, LLC*

Mike Kenyon
Bob Noe
Kenyon Disend, PLLC
11 Front Street South
Issaquah, WA 98027-3820
Email: Mike@kenyondisend.com
Email: Bob@kenyondisend.com
*Counsel for Defendant City of Medina*

I certify under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

s/Peggy S. Cahill
Legal Assistant

INTERVENORS' MOTION FOR SUMMARY JUDGMENT - 13

Bricklin & Newman, LLP
Attorneys at Law
1001 Fourth Avenue, Suite 3303
Seattle WA 98154
Tel. (206) 264-8600
Fax. (206) 264-9300